Raed Gonzalez, Esq.
GONZALEZ OLIVIERI, LLC
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Tel: 713-481-3040
Fax: 713-588-8683
*Counsel of Record for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Humberto Garcia | § | |
| Andrea Soledad Garcia | § | |
| Anna Beatriz Garcia | § | |
| L.G., by her next friend, Andrea | § | |
|     Soledad Garcia | § | |
| Pamela Rico | § | |
| Dulce Montero | § | |
| Celica Arredondo | § | |
| Vladimir Hernandez | § | Case No. 4:26-cv-00963 |
| Madelin Guevara | § | |
| Michelle Gutierrez | § | Date: February 6, 2026 |
| Karem Salinas | § | |
| Ariadna Caballero | § | Class Action Complaint |
| Monica Contreras | § | for Declaratory Relief |
| Natalie Frias | § | |
| Sheccid Flores | § | |
| Melissa Hernandez | § | |
| Jennifer Lopez | § | |
| Stacy Aureoles | § | |
| Yolanda Ambrocio | § | |
| Samantha Sanchez | § | |
| Leniz Romero | § | |
| Karena Berruete | § | |
| Sonia Lopez | § | |
| Esmeralda Salmeron | § | |
| Miranda Sanchez | § | |

Emmanuel Adonai Palma                §
Itzayana Lizette Aurioles            §
Jeniffer Rodriguez                   §
Billy Martinez                       §
Sergio Martinez                      §
Luceli Lopez                         §
Estrella Mendoza                     §
Elizabeth Sanchez                    §
Axel Del Angel                       §
                                     §
On behalf of themselves and all others §
similarly situated                   §
                                     §
        *Plaintiffs*,                §
                                     §
        v.                           §
                                     §
KRISTI NOEM, U.S. DEPARTMENT OF      §
HOMELAND SECURITY, U.S.              §
IMMIGRATION AND CUSTOMS              §
ENFORCEMENT, TODD M. LYONS,          §
                                     §
        *Defendants*.                §

_____

## PLAINTIFFS' COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

"We take people into custody based partly on how they look."

-Gregory Bovino, September 30, 2025

Plaintiffs are productive and law-abiding citizens of the United States forced to bring this action for declaratory relief pursuant to 28 U.S.C. § 2201, on behalf of themselves and all other similarly situated Latino United States citizens who have been and will continue to be affected by the Defendants' lawless and unconstitutional imposition of a requirement for United States citizens to establish that they are United States citizens or have them carry on their person proof of citizenship while within the territory of these United States.

## I.  INTRODUCTION

1. Maya Angelou's observation that "When someone shows you who they are, believe them the first time" speaks directly to words leading to unlawful actions by Federal agents, operating under the auspices of the Department of Homeland Security ("DHS" or "Department"), in this community and others across this nation. While Greg Bovino, Commander-at-Large of the DHS' Border Patrol, was caught on tape bragging that: "We take people into custody based partly on how they look,"[1] our communities, especially in the diverse

---

[1] WBEZ Chicago | https://www.wbez.org/immigration/2025/09/30/transcript-audio-gregory-bovino-immigrant-arrests-downtown-chicago-chosen-how-they-look

Houston community, have borne the impact of widespread and often violent unjustified stops, unconstitutional and warrantless searches, seizures, and arrests of United States citizens based solely on race and perceived ethnicity, without regard to citizenship, immigration status, or individualized suspicion. While Plaintiffs are proud Latino members of this truly great America, the resulting targeting of "brown" and "black" members of our community often lands on immigrants from many other countries, whether Haiti, South Asia, the Middle East, or elsewhere. This is not a small net cast by Defendants in this community, as approximately 28% to 29.3% of the residents within the city of Houston are immigrants (foreign-born), with the broader Houston metropolitan area having nearly one-quarter (about 24%–25%) of its population born outside the United States. Greater Houston Partnership, https://d9.houston.org/houston-data/foreign-born-population-data. In Harris County, this population makes up over 28% of residents, reflecting one of the most diverse, international populations in the U.S. *Id*.

2. At the core of DHS's enforcement campaign is the disproportionate targeting of Latino United States citizens, who are subjected to stops and arrests driven by racial profiling and discriminatory animus.

3. A recent unreported but traumatic example of abuse of American citizens resulting from these improper actions was captured on home video. On

January 9, 2026, between 7 a.m. and 7:30 a.m., U.S. Citizen Humberto García saw trucks outside the home he shares with his three U.S. citizen sisters—Andrea, Anna, and L.G.—noncitizen mother, and noncitizen father. Although Mr. Garcia's parents are not United States citizens, they are currently in the process of obtaining lawful permanent resident ("LPR") status.

4. Without any chance for Mr. Garcia to take any action, ICE officers began jumping over the fence surrounding the family home, pointing their guns at Mr. Garcia and began to attack him without even identifying themselves as law enforcement officers.

5.



6.

7. 

8. 



9.

10. The ICE officers proceeded to knock Mr. Garcia to the ground, scratched his face, and pushed him with their feet on his back. Afterwards, also without any warning, another U.S. citizen, Ms. Andrea Garcia was kicked and knocked to the ground causing her to fall.

11. Ultimately, and without a judicial warrant, ICE officers broke down the door to the family home and dragged Mr. Garcia's parents away; however, in the process of doing so, they unnecessarily and improperly harmed and detained three U.S. citizens outside their own family home for hours.[2]

12. Numerous news reports nationwide clearly demonstrate that Plaintiffs' ordeal is not an isolated incident of ICE misconduct and the violation of the U.S.

---

[2] https://youtu.be/v4093eREOcE?si=TZKVc2kW_fFu2NWn

citizens' constitutional rights. "He has sent hither swarms of officers to harass our people and eat out their substance." Declaration of Independence (1776). America was founded to escape the very tyranny and unaccountable power that we are facing today. The Founders were rejecting a government that controlled its inhabitants with fear and harassment normalized as administration. America was founded on the refusal to prioritize efficiency over liberty; it was founded on the premise that power is to be restrained by law and consent and that government enforcement should exist to serve the people, not to condition them into obedience.

13. ICE is driven by dangerous rhetoric and assurances that they will be afforded immunity for their actions. One agent was recently caught on camera exclaiming: "It's like Call of Duty! Pretty cool, huh?" This cavalier attitude is accepted and celebrated. Kristi Noem stated on January 8, 2026, that "we are on offense, using every single tool we have to protect the American people" – while ignoring the fact that many of the people ICE is attacking are, in fact, American people.

14. Agents are allowed to act with impunity, having been reassured by Stephen Miller that "you have federal immunity in the conduct of your duties…anybody who obstructs you is committing a felony."

15. In short, ICE has ignored Constitutional protections and created and

encouraged an environment of seize first and sort it out later. Constitutional protections and limits are not even treated as an afterthought; they are ignored, trampled on, and forgotten.

16. The Department, a government agency charged with implementing and enforcing the law, disregarded statutory and constitutional limits, by issuing an ultra-vires directive.

17. Specifically, recent statements by the Secretary of the DHS indicating that U.S. citizens should be prepared to provide proof of citizenship during Immigration and Customs Enforcement ("ICE") operations, contravenes existing law. Such statements fundamentally alter the plain language of the Immigration and Nationality Act ("INA") and constitute a clear infringement upon the constitutionally protected rights of Americans.

18. Most American citizens do not have "immigration documents," and to require them to carry such documents to avoid being detained or subjected to violence by federal immigration agents is absurd and unconstitutional, since U.S. citizens cannot be deported and they certainly must not be randomly targeted by ICE simply for being Latino.

19. Accordingly, the Secretary of Homeland Security's directive requiring United States citizens to carry proof of citizenship while within the United States represents a fundamental and unlawful alteration of the civil rights of United

States citizens, particularly those of Latino ethnicity.

20. DHS's enforcement action indiscriminately targeting Latinos based on racial profiling and requiring documentation of United States citizenship in order to avoid detention or worse, physical harm, sweep in numerous U.S. citizens in the process.

21. No doubt, these brutal stops and arrests by ICE disrupt the most ordinary of activities. However, Defendants are attempting to create a needless barrier to the daily lives of the American people by implementing these disturbing measures that are contrary to law and must be halted.

22. On these bases, Plaintiffs seek a declaration from this Court, stating that United States citizens are not required to carry with them proof of citizenship while within the United States. Plaintiffs seek this declaratory judgment against Defendants, to protect their rights under the laws and the Constitution of the United States, as well as the rights of all similarly situated Americans, and for this Court's declaration to provide clarification and guidance to Defendants and its employees.

## II. JURISDICTION AND VENUE

23. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §§ 2201-2202, because Plaintiffs are seeking a

declaratory judgment of this Court.

24. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and (e), because Plaintiffs reside in Houston, Texas, the surrounding metropolitan area or within the jurisdiction of the Federal Court for the Southern District of Texas.

### III.    PARTIES

25. Plaintiff, Celica Arredondo is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

26. Plaintiff, Umberto Garcia is a U.S citizen of Hispanic ethnicity who resides in Donna, Texas.

27. Plaintiff, Andrea Soledad Garcia is a U.S citizen of Hispanic ethnicity who resides in Donna, Texas.

28. Plaintiff, Vladimir Hernandez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

29. Plaintiff, Pamela Rico, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

30. Plaintiff, Dulce Montero, is a U.S citizen of Hispanic ethnicity who resides in Baytown, Texas.

31. Plaintiff, Ariadna Caballero, is a U.S citizen of Hispanic ethnicity who resides in Pasadena, Texas.

32. Plaintiff, Monica Contreras, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

33. Plaintiff, Madelin Guevara, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

34. Plaintiff, Michelle Gutierrez, is a U.S citizen of Hispanic ethnicity who resides in Jacinto City, Texas.

35. Plaintiff, Karem Salinas, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

36. Plaintiff, Natalie Frias, is a U.S citizen of Hispanic ethnicity who resides in Pasadena, Texas.

37. Plaintiff, Sheccid Flores, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

38. Plaintiff, Melissa Hernandez, is a U.S citizen of Hispanic ethnicity who resides in Pasadena, Texas.

39. Plaintiff, Jennifer Lopez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

40. Plaintiff, Stacy Aureoles, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

41. Plaintiff, Yolanda Ambrocio, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

42. Plaintiff, Samantha Sanchez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

43. Plaintiff, Leniz Romero, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

44. Plaintiff, Karena Berruete, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

45. Plaintiff, Sonia Lopez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

46. Plaintiff, Esmeralda Salmeron, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

47. Plaintiff, Miranda Sanchez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

48. Plaintiff, Emmanuel Adonai Palma, is a U.S citizen of Hispanic ethnicity who resides in South Houston, Texas.

49. Plaintiff, Itzayana Lizette Aurioles, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

50. Plaintiff, Jeniffer Rodriguez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

51. Plaintiff, Billy Martinez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

52. Plaintiff, Sergio Martinez, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

53. Plaintiff, Luceli Lopez, is a U.S citizen of Hispanic ethnicity who resides in Katy, Texas.

54. Plaintiff, Estrella Mendoza, is a U.S citizen of Hispanic ethnicity who resides in Houston, Texas.

55. Plaintiff, Elizabeth Sanchez, is a U.S citizen of Hispanic ethnicity who resides in South Houston, Texas.

56. Plaintiff, Axel Del Angel, is a U.S citizen of Hispanic ethnicity who resides in Pasadena, Texas.

57. Plaintiff Anna Beatriz Garcia is a U.S. citizen who resides in Donna, Texas.

58. Plaintiff L.G. is a U.S. citizen and minor child who resides in Donna, Texas. She is represented by her next friend Andrea Soledad Garcia.

59. Defendant Kristi Noem is the Secretary of the DHS. She is sued in her official capacity. Defendant Noem directs each of the component agencies within the DHS. In her official capacity, she is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, and she issued the statement indicating that U.S. citizens will be required to provide proof of citizenship within the United States.

60. Defendant DHS is a cabinet-level department of the U.S. federal government.

14

Its components include U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and U.S. Immigration and Customs Enforcement ("ICE").

61. Defendant ICE is a sub-agency of DHS responsible for enforcing immigration laws.

62. Defendant Todd M. Lyons is the Acting Director of ICE. He is sued in his official capacity.

## IV.    LEGAL AND PROCEDURAL BACKGROUND

63. Section 1 of the 14th Amendment to the U.S. Constitution states: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."

64. The Fourth Amendment to the United States Constitution, protects the people from unreasonable searches and seizures in their person, houses, papers, and effects.

65. At its core, this means the government cannot stop, search, or demand documents from a person without legal justification. "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person, and the Fourth Amendment requires that seizure be reasonable." *See United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (1975) (internal quotation marks and citation omitted). The Fourth Amendment

"imposes limits on search-and seizure powers in order to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *See United States v. Martinez-Fuerte*, 428 U. S. 543, 554 (1976).

66. The idea that U.S. citizens do not have to carry immigration or identity papers is strongly connected to the Fourth Amendment and broader constitutional principles about personal liberty.

67. Importantly, Congress has established the limits on permissible immigration enforcement actions.

68. The INA does authorize immigration officers to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." 8 U.S.C. §1357(a)(1). Further, immigration officers "may briefly detain" an individual "for questioning" if they have "a reasonable suspicion, based on specific articulable facts, that the person being questioned . . . is an alien illegally in the United States." 8 C.F.R. § 287.8(b)(2).

69. Also, under the INA, every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him pursuant to 8 U.S.C § 1304(d). *See* 8 U.S.C. § 1304.

70. However, there is no legal requirement for U.S. citizens to carry immigration

papers or have proof of their citizenship with them while within the United States.

71. As such, an American citizen is not required by federal law to continually prove citizenship in daily life and there is no legal requirement that citizens carry "immigration papers" to validate their status.

72. The silence of Congress in this area is dispositive: if such a sweeping obligation existed, it would appear in the U.S. Code.

73. Additionally, Congress has legislated the issue of false claim to U.S. citizenship, making it a Federal crime punishable by fines, imprisonment for up to three years, or both. *See* 18 U.S.C. § 911. Congress also amended the INA, making all individuals who make a false claim to U.S. citizenship on or after September 30, 1996, permanently inadmissible. *See* 8 U.S.C. § 1182(a)(6)(C). Congress further penalized false claim to U.S. citizenship by making it a ground of deportability. *See* 8 U.S.C 1227(a)(3)(D).

74. Significantly, the government has the initial burden of proving alienage (non-citizenship) by clear, unequivocal, and convincing evidence in removal proceedings. *See Matter of Benitez,* 19 I&N Dec. 173 (BIA 1984); *Matter of Guevara*, 20 I&N Dec. 238 (BIA 1991).

75. A requirement that individuals carry and present proof of U.S. citizenship, reverses this burden, forcing citizens to prove lawful status merely to avoid

detention or investigation. That inversion violates due process under the Fifth Amendment.

76. The Fifth Amendment's Due Process Clause prohibits the federal government from requiring U.S. citizens to carry or produce immigration papers because such a requirement reverses the burden of proof, undermines a protected liberty interest, and authorizes arbitrary deprivation of freedom without procedural safeguards.

77. The absence of a national "carry your papers" requirement reinforces that freedom of movement is the default, not something conditioned on documentation. Requiring citizens to prove citizenship on demand treats that status as conditional, rather than constitutionally secure.

78. Finally, requiring U.S. citizens to carry proof of citizenship would impose a new affirmative legal duty. Now, the three branches of government may impose new affirmative legal obligations on U.S. citizens, provided that such obligations do not violate the U.S. Constitution and comply with applicable procedural requirements, including notice-and-comment. Because no such "carry your papers" duty has been legally imposed on Americans within the U.S., neither federal nor state authorities may require it by policy or practice.

## V.    FACTUAL ALLEGATIONS

79. Numerous news reports clearly demonstrate that Defendants are conducting a

campaign of mass stops and arrests purportedly for immigration enforcement, disproportionately targeting Latino individuals. In the process, they are detaining—and in many cases physically abusing—large numbers of people including U.S. citizens and individuals with lawful immigration status, in violation of the Fourth and Fifth Amendments.

80. Defendants are effecting warrantless arrests without probable cause to believe that individuals are removable, in violation of the Fourth Amendment and the INA's warrantless arrest provision, 8 U.S.C. § 1357(a)(2). These practices have resulted in the arrest of numerous U.S. citizens, even after arrestees stated that they are U.S. citizens and offered proof of citizenship, including U.S. passports.[3]

81. Justice Sotomayor's dissent in *Perdomo v. Noem*, 606 U. S. ____ (2025) (the Supreme Court stay order issued Sept. 8, 2025) includes detailed findings of fact drawn from the district court record about "Operation At Large" and how federal immigration agents were conducting stops and mass arrests in Los Angeles, by relying solely on generalized traits—such as *apparent race or ethnicity, speaking Spanish or English with an accent, presence in certain*

---

[3]  https://www.theguardian.com/us-news/2026/jan/09/maryland-woman-us-citizen-released-ice-custody
https://abcnews.go.com/US/us-born-citizen-sues-after-arrested-immigration-agents/story?id=126129734
https://www.supremecourt.gov/opinions/24pdf/25a169_5h25.pdf

*locations, and type of work*—without individualized reasonable suspicion.

82. The dissent describes a pattern of militarized immigration enforcement in which armed and masked agents stopped and detained Latino individuals, including U.S. citizens, without individualized suspicion.

83. In one incident, agents confronted Jason Gavidia, a Latino U.S. citizen, repeatedly demanded proof that he was "American," and used physical force when he could not immediately answer questions about his birthplace, releasing him only after he produced a REAL ID that was never returned.

84. The dissent also recounts repeated workplace raids targeting U.S. citizens. In Whittier, agents raided a car wash managed by Jorge Viramontes, a dual U.S. and Mexican citizen, returning multiple times and detaining him after rejecting his California driver's license as insufficient while attempting to verify his citizenship.

85. Additional incidents involved even greater force and no questioning at all, including armed agents rushing Latino men at a bus stop, chasing and tackling day laborers at a Home Depot, and violently detaining a street vendor. The dissent emphasizes that these incidents reflect a consistent pattern of indiscriminate, forceful seizures lacking individualized suspicion. See *Perdomo v. Noem*, *supra.*

86. On or about January 16, 2026, the Secretary of the DHS made statements to

the press, indicating that U.S. citizens should be prepared to provide proof of citizenship during ICE operations.

## VI.    CLASS ACTION ALLEGATIONS

87. Plaintiffs bring this action under Federal Rules of Civil Procedure 23(a) and 23(b)(2) on behalf of themselves and a class of all other persons similarly situated.

88. Plaintiffs seek to represent the following Proposed Class: All Latino United States citizens who will be affected by the Defendants' imposition of a requirement for United States citizens to carry proof of citizenship while within the United States.

89. Excluded from the Class are Defendants named herein and the Agencies for which they work. Likewise excluded from the class is any judge or judicial officer presiding over this matter and any members of their family and judicial staff.

90. Class certification is appropriate because this action involves questions of law and fact common to the class, the class is so numerous that joinder of all members is impractical, the claims of Plaintiffs are typical of the claims of the class, Plaintiffs will fairly and adequately protect the interests of the class, and Defendants have acted on grounds that apply generally to the class, so that final declaratory relief stating that United States citizens are not required to carry with

them proof of citizenship while within the United States is warranted.

91. With respect to numerosity, a "plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members. *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

92. The number of actual class members is not the determinative question, as "[t]he proper focus (under Rule 23(a)(1)) is not on the numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981).

93. In determining whether joinder of members is impracticable, a court may consider "geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman*, 651 F.2d at 1038.

94. A class consisting of more than forty members "should raise a presumption that joinder is impracticable." *Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 624 (5th Cir. 1999) (quoting 1 Newberg on Class Actions § 3.05, at 3-25 (3d ed. 1992)).

95. At present, Plaintiffs have identified 34 potential Class members; however, the precise number of potential Class members is still not known by Plaintiffs at this time, and they have no way of communicating with these members. Although it

is not possible to accurately state the total number of individuals who may potentially be class members, estimates indicate that there are as many as 53 million Latino American citizens in the U.S. who may be affected by the requirement to carry proof of U.S. citizenship.[4] Plaintiffs also wish to point out that of the estimated 53 million Latino U.S. citizens, about 45 million are U.S. born citizens.[5] These individuals are all potential Class members and can be identified as this case progresses. Therefore, Plaintiffs maintain that numerosity is easily met in this case.

96. With respect to commonality, the test is not demanding and is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).

97. The class satisfies the commonality requirements of Rule 23(a)(2). The members of the class are being required to carry proof of U.S. citizenship while within the U.S. The suit also raises questions of law common to members of the proposed class, including whether the Department's requirement that Americans carry proof citizenship in order to move freely within the U.S., is unconstitutional.

---

[4] https://www.pewresearch.org/short-reads/2025/10/22/key-facts-about-us-latinos/
[5] *Id.*

98. Given the aforementioned common issues of law and fact, Plaintiffs maintain that commonality has been met in this case.

99. Similar to commonality, the test for typicality is also not demanding and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightborn*, 118 F.3d at 426. Here, Plaintiffs' claim is typical for the claims of all Class members because each member is being required to carry proof of U.S. citizenship while within the U.S.

100. With respect to adequate and fair representation of the class, a named plaintiff is only rendered an inadequate representative if the differences between the named plaintiff and class members creates a conflict between the named plaintiff's and class members' interests. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

101. In this case, Plaintiffs affirm that they will adequately and fairly protect the interests of the members of the Class, as they will be legally wronged by the DHS, just like all other Class members have and/or will be, and they have retained competent counsel to remedy that wrong.

102. Furthermore, Plaintiffs have no interests that are unethical or in conflict with other members of the Class. Accordingly, they maintain that they will be fair and adequate representatives of the Class.

103. Finally, Defendants have acted on grounds generally applicable to the proposed Class. Therefore, final declaratory relief is appropriate with respect to the entire Class.

104. Having satisfied the requirements under Rule 23(a), Plaintiffs will now address how the proposed Class also satisfies the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a class action can be maintained if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy (superiority)."

105. Relevant to the Rule 23(b) requirements are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

106. Because the members of the Class share the same new unconstitutional obligation imposed on them by the Defendants, they will have no interest in individually controlling the prosecution or defense of separate actions. Because the Class members' cases are identical to each other, in that they share the exact

same questions of law and fact, they have a strong desire and interest that litigation be concentrated in one forum. Further, there will be no difficulty, on the part of Plaintiffs and their counsel, in managing a class action complaint, as said counsel has extensive experience involving complex immigration law issues. In sum, Plaintiffs move that the proposed Class, having met all the requirements under Rule 23(a) and (b)(3), be certified by this Court.

### VII.   CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### (Violation of the U.S. Const. Amend. IV)

107.    Plaintiffs incorporate by reference the allegations in paragraphs 1-108.

108.    The Fourth Amendment to the United States Constitution, protects the people from unreasonable searches and seizures in their person, houses, papers, and effects.

109.    Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person, and the Fourth Amendment requires that seizure be reasonable." *United States v. Brignoni-Ponce, supra.*

110.    Requiring a U.S. citizen to carry proof of citizenship and to produce such proof upon demand constitutes a seizure and/or investigatory detention under the Fourth Amendment when enforced through threat of arrest, detention, or continued restraint.

111.    U.S. citizenship is not a crime, nor is the failure to carry proof of

citizenship a criminal offense for U.S. citizens absent an express act of Congress imposing such a requirement.

112. Demands that U.S. citizens carry or produce proof of citizenship—without individualized reasonable suspicion of criminal activity—are not narrowly tailored to any legitimate law enforcement purpose and instead amount to generalized, suspicion-less seizures. *United States v. Brignoni-Ponce, supra.*

113. Conditioning a person's freedom of movement on the possession of citizenship documentation effectively reverses the Fourth Amendment's presumption of liberty and treats such person(s) as presumptively suspect.

114. Such practices authorize arbitrary and discretionary enforcement, inviting stops and detentions based on appearance, ethnicity, language, or perceived national origin rather than objective facts, thereby rendering the seizures unreasonable under the Fourth Amendment.

115. As such, Defendants' statements and practices requiring or enforcing the carrying or production of proof of citizenship by U.S. citizens within the U.S., will directly and proximately cause Plaintiffs to be unlawfully seized, detained, and deprived of their constitutional rights.

116. For the foregoing, Defendants' conduct violates clearly established Fourth Amendment protections, entitling Plaintiffs to declaratory relief.

27

## SECOND CLAIM FOR RELIEF
### (Violation of the U.S. Const. Amend. V)

117.    Plaintiffs incorporate by reference the allegations in paragraphs 1-118.

118.    The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law. Freedom from arbitrary detention and compelled proof of legal status is a core liberty interest protected by the Due Process Clause.

119.    The Federal government bears the burden of establishing alienage; individuals—particularly U.S. citizens—have no affirmative obligation to prove citizenship absent lawful process.

120.    Requiring U.S. citizens to carry proof of citizenship impermissibly shifts the burden of proof from the government to the individual. This inversion of constitutional norms allows deprivation of liberty—detention, arrest, or prolonged seizure—based solely on a citizen's inability or refusal to produce documents they are not legally required to possess.

121.    The INA requires noncitizens to carry registration documents, but those provisions do not apply to U.S. citizens. As such, any executive or law-enforcement practice imposing such a requirement on citizens exceeds statutory authority and violates due process.

122.    Due process requires fair notice of legal obligations and clear standards

governing enforcement. A de facto requirement that citizens carry proof of citizenship is unconstitutionally vague and arbitrary, providing no clear guidance as to what documents suffice, when they must be produced, or under what circumstances detention is justified.

123. Such a requirement creates a substantial risk of erroneous deprivation of liberty, particularly for citizens who do not routinely carry passports or birth certificates.

124. As a direct and proximate result of Defendants' statements and practices, Plaintiffs face a significant likelihood of unlawful detention, coercive questioning, and deprivation of liberty without due process of law, in violation of the Fifth Amendment.

### VII. PRAYER FOR RELIEF

125. Wherefore, Plaintiffs respectfully request that this Court:

a. accept jurisdiction and venue as proper;

b. issue a declaratory judgment on behalf of Plaintiffs, declaring that any policy or practice requiring U.S. citizens to carry proof of citizenship within the U.S., violates Plaintiffs' rights under the Fourth and Fifth Amendments to the United States Constitution;

c. Declare that any policy or practice requiring U.S. citizens to carry proof of citizenship within the United States is unlawful;

d. Declare that any policy or practice of the DHS requiring U.S. citizens to carry proof of citizenship within the U.S. is ultra vires, arbitrary, capricious, and not in accordance with law;

e. Award Plaintiffs reasonable attorney's fees, expenses, and costs of court, pursuant to the Equal Access to Justice Act, and any other applicable statute or regulation;

f. Grant Plaintiffs all other relief as the Court may deem just and proper.

Respectfully submitted,

GONZALEZ OLIVIERI, LLC

*/s/ Raed Gonzalez*

_____

Raed Gonzalez, Esq.
Attorney for Plaintiff
Texas Bar No. 24010063
9920 Gulf Freeway, Suite 100
Houston, TX 77034
Phone: (713) 481-3040,
Fax:   (713)588-8683
rgonzalez@gonzalezolivierillc.com